**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| JOSEPH SALVO,<br><br>Plaintiff,<br><br>v.<br>CAM INDUSTRIAL SOLUTIONS, LLC and CENOVUS ENERGY INC.,<br><br>Defendants. | **Case No. 3:26-cv-2152**<br><br>**COMPLAINT WITH DEMAND FOR JURY TRIAL** |

Plaintiff Joseph Salvo ("Plaintiff" or "Salvo"), by and through his undersigned counsel, brings this case against Defendants CAM Industrial Solutions, LLC ("CAM") and Cenovus Energy Inc. ("Cenovus") (CAM and Cenovus collectively hereinafter the "Defendants"), and alleges upon personal knowledge as to himself and his own conduct and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is an employment-discrimination and retaliation case arising from Defendants' decision to remove a skilled heavy-equipment operator from all work and pay after he requested narrowly tailored religious and medical accommodations from a facial-hair rule at the Cenovus Lima Refinery.

2. Plaintiff is a Messianic Pronomian Jewish believer whose sincerely held religious practice requires him to maintain his beard.

3. Plaintiff also has eczema and type 2 diabetes, impairments that affect the operation of his skin and endocrine systems and materially increase the pain, inflammation, infection risk, and healing complications associated with repeated shaving.

4. Plaintiff disclosed these religious and medical conflicts, supplied the documentation Defendants requested, proposed practical alternatives, offered to bear the cost of alternative equipment, and repeatedly asked to participate in a genuine interactive process.

5. Before Plaintiff requested accommodation, he had performed his heavy-equipment duties successfully for approximately four (4) weeks, including while visibly maintaining facial hair.

6. He was not required to use a respirator, was not issued a respirator, was not medically evaluated for respirator use, was not fit-tested, and was not disciplined for any performance or safety issue.

7. After Plaintiff requested accommodation, Defendants told him that he could work only if he shaved, barred him from the refinery, removed him from the schedule, and left him without work or pay indefinitely.

8. Defendants did so without identifying an actual task Plaintiff could not perform, without conducting an individualized assessment of his ordinary duties, and without meaningfully considering exceptions, alternative respiratory protection, task modification, or reassignment.

9. Defendants later characterized a tight-fitting respirator as an essential function of Plaintiff's job.

10. Their actual practices contradicted that *post hoc* characterization: Plaintiff and the other operators were not required to wear such respirators in performing the work Plaintiff had been assigned, and respirator use among the crew was limited to emergency-response personnel and a small number of volunteers for special assignments.

11. CAM recruited, hired, paid, and directly supervised Plaintiff, while Cenovus owned or controlled the worksite, imposed the challenged site rule, controlled site access and site-specific safety requirements, and possessed final authority over whether Plaintiff could return with an accommodation.

12. Each Defendant participated in and ratified the challenged decisions.

13. Plaintiff also complained internally to CAM, reported discrimination to Cenovus through its ethics and integrity process, and initiated proceedings with the United States Equal Employment Opportunity Commission ("EEOC").

14. Rather than correct the exclusion, Defendants continued it.

15. Defendants' conduct violates Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq.; and the Ohio Civil Rights Act ("OCRA"), Ohio Rev. Code Chapter 4112.

## JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. §§ 2000e-5(f)(3) and 12117(a) because they arise under federal law and present a question thereunder.

17. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal claims.

18. This Court may award declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and the remedial provisions of Title VII, the ADA, and the OCRA.

19. Venue is proper in the Northern District of Ohio under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed at, directed to, and implemented against Plaintiff at the Lima Refinery in Lima, Ohio, and because records relevant to the challenged employment practices were maintained or administered in this District.

20. Venue is independently proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Lima, Ohio, including Plaintiff's work, his exclusion from the worksite, and Defendants' denial of his accommodation requests.

21. Lima is located in Allen County, Ohio, within the Western Division of the Northern District of Ohio, making assignment to this Division appropriate.

22. This Court has personal jurisdiction over CAM because CAM employed Plaintiff in Ohio, maintained an operating presence in Lima, and committed the acts alleged herein in Ohio.

23. This Court has personal jurisdiction over Cenovus because Cenovus, directly and through its controlled affiliates and agents, owned, operated, managed, or controlled the Lima Refinery, conducted substantial business in Ohio, and participated in the employment decisions challenged herein.

## PARTIES

24. Plaintiff Joseph Salvo is an adult resident of Troy, Ohio.

25. At all relevant times, Plaintiff was qualified to work as a heavy-equipment operator and was a member in good standing of the International Union of Operating Engineers ("IUOE").

26. Defendant CAM Industrial Solutions, LLC is a business entity that provides industrial maintenance, turnaround, capital-construction, and related services, does business in Ohio, and maintained or used an operating location at or associated with 1150 South Metcalf Street, Lima, Ohio 45804.

27. At all relevant times, CAM recruited Plaintiff through the union hall, hired him, placed him at the Lima Refinery, paid him, assigned and supervised his work, maintained personnel and human-resources functions concerning him, and communicated the challenged employment directives to him.

28. Defendant Cenovus Energy Inc. is a Canadian energy company that does business in Ohio and, directly or through controlled affiliates, owned, operated, managed, or controlled the Cenovus Lima Refinery located at or associated with 1150 South Metcalf Street, Lima, Ohio 45804.

29. At all relevant times, Cenovus established and enforced site-access, orientation, training, scheduling, overtime, leave, and safety requirements that governed CAM personnel assigned to the refinery, including Plaintiff.

30. At all relevant times, each Defendant employed at least fifteen (15) employees and was a covered employer within the meaning of Title VII and the ADA and an employer within the meaning of the OCRA.

31. Whenever this Complaint alleges that a Defendant performed an act, the allegation includes the acts of that Defendant's owners, parents, subsidiaries, managers, directors, officers, employees, agents, and representatives acting within the scope of their authority, as well as acts the Defendant later authorized, approved, or ratified.

**JOINT-EMPLOYER AND AGENCY ALLEGATIONS**

32. CAM and Cenovus jointly exercised, shared, or allocated control over the essential terms and conditions of Plaintiff's work at the Lima Refinery.

33. CAM sourced labor through the union hall, hired Plaintiff, maintained his payroll relationship, and supplied his day-to-day chain of command, including Superintendent Robert Sharp, Director Shane Taylor, Human Resources representative Hunter Coffey, and supervisor or foreman Randy Hertel.

34. Cenovus controlled the premises on which Plaintiff could work and possessed the practical ability to grant or deny Plaintiff access to the only CAM assignment available to him in the Lima area.

35. Cenovus supplied or required the site-specific orientation and training that Plaintiff had to complete before working and dictated the facial-hair requirement that CAM enforced against him.

36. Upon information and belief, Cenovus also approved or controlled work hours, overtime, days off, and other conditions affecting contractors assigned to its facility, including CAM employees.

37. CAM managers told Plaintiff that CAM did not have an independent facial-hair policy governing the issue and that Cenovus' standard controlled, making Cenovus the final decision-maker on whether Plaintiff could return with an accommodation.

38. CAM enforced Cenovus' decision by instructing Plaintiff not to report, conditioning his return on shaving, removing him from active work, and failing to place him elsewhere.

39. Cenovus received direct notice of Plaintiff's discrimination complaints, opened an internal ethics or integrity matter, assigned investigative personnel, received Plaintiff's supporting material, and nevertheless did not restore his access or require CAM to reinstate him.

40. Defendants communicated about Plaintiff's requests and acted together in denying him work, while each retained authority to prevent or remedy the resulting discrimination.

41. Accordingly, CAM and Cenovus were Plaintiff's joint employers and agents of one another for the challenged practices.

42. In the alternative, each Defendant is liable for the discriminatory acts it directly caused, participated in, authorized, or ratified.

**ADMINISTRATIVE EXHAUSTION AND TIMELINESS**

43. On May 2, 2025, Plaintiff timely filed EEOC Charge No. 471-2025-00021 against both CAM and Cenovus, alleging disability discrimination and failure to accommodate under the ADA, religious discrimination and failure to accommodate under Title VII, retaliation, and related violations of Ohio law.

44. The Charge form identified the Ohio Civil Rights Commission and the EEOC, and Plaintiff expressly requested that the Charge be filed with both the EEOC and the applicable state or local agency.

45. Upon information and belief, the Charge was dual-filed with or transmitted to the Ohio Civil Rights Commission pursuant to the agencies' work-sharing procedures.

46. The factual allegations in this Complaint were included in the Charge, were presented in Plaintiff's supplemental submission and rebuttal, or are reasonably related to and grew out of the EEOC investigation of the Charge.

47. On June 15, 2026, the EEOC issued a Determination and Notice of Rights addressed to Plaintiff and identifying Charge No. 471-2025-00021.

48. The notice advised Plaintiff that the EEOC would not proceed further with its investigation and authorized suit against the respondents named in the Charge.

49. Plaintiff received the EEOC notice on or about June 15, 2026.

50. This action is timely filed within ninety (90) days of receipt of that notice.

51. Based on Plaintiff's dual-filing request and the applicable work-sharing procedures, Plaintiff alleges that the administrative prerequisites for his OCRA claims have been satisfied.

52. All conditions precedent to his federal claims have been satisfied.

## FACTUAL ALLEGATIONS

### A. PLAINTIFF WAS QUALIFIED AND SUCCESSFULLY PERFORMED THE ASSIGNED WORK

53. Plaintiff is an experienced heavy-equipment operator who had worked at industrial facilities involving hazardous or harsh chemicals before his placement at the Lima Refinery.

54. In July 2024, CAM sought a heavy-equipment operator for work at the Lima Refinery through Plaintiff's IUOE union hall.

55. CAM's personnel request was dated on or about July 22, 2024, and Plaintiff was dispatched or called out on or about July 30, 2024.

56. The call-out information actually conveyed to Plaintiff did not explain that maintaining a clean-shaven face was an essential job function, did not advise him that he would routinely use a tight-fitting SCBA, and did not state that no accommodation could be considered.

57. CAM later relied on a personnel-request form bearing a notation concerning beards and respirator use.

58. That internal or intermediary form was not provided directly to Plaintiff before he accepted the referral, and it did not contain a substantive job description identifying routine tight-fitting respirator use as a duty of a heavy-equipment operator.

59. Plaintiff accepted the assignment because it shortened his commute and offered an opportunity to perform crane and heavy-equipment work for which he was qualified.

60. Plaintiff completed the required background check and ten-panel drug screen before reporting to the refinery.

61. Plaintiff began work for CAM at the Cenovus Lima Refinery on August 15, 2024 and was assigned to work in or around Gate 7.

62. Plaintiff performed every assigned heavy-equipment function competently and safely; he received no written warning, discipline, complaint, or negative performance review from CAM or Cenovus.

63. Plaintiff attended multiple safety meetings and interacted with CAM and Cenovus safety personnel without being questioned, counseled, or disciplined about his growing facial hair.

64. Plaintiff's coworkers gave him the nickname "Bob Ross" because of his visible hair and beard, further confirming that his facial hair was open and obvious while Defendants continued to assign him work.

## B. DEFENDANTS DID NOT REQUIRE RESPIRATOR USE IN PLAINTIFF'S ORDINARY WORK

65. The training and orientation Defendants provided did not establish that every heavy-equipment operator had to use a tight-fitting respirator during ordinary operations.

66. An orientation representative informed attendees that exceptions to the facial-hair preference existed, including for medical or religious reasons.

67. Plaintiff observed individuals with beards present at the refinery or its orientation and transportation operations, including two men in an orientation setting and certain bus drivers, confirming that the site rule was not universally enforced against every person allowed onsite.

68. After beginning work, Plaintiff asked Randy Hertel and other operators about the asserted fit-testing and respirator requirement.

69. Plaintiff was told that fit-testing or participation in respirator-related assignments was voluntary for the operators performing his type of work.

70. During the approximately four (4) weeks Plaintiff worked at the refinery, Defendants did not require him to wear any respirator to perform his assigned duties.

71. Defendants did not issue Plaintiff a respirator, perform or arrange a pre-use medical evaluation, conduct a qualitative or quantitative fit test, or train him on a specific respirator assigned to his position.

72. Plaintiff did not observe the ordinary heavy-equipment operators wearing tight-fitting respirators to perform the work he performed.

73. Respirator use was limited to the fire squad and approximately two volunteers on the maintenance crew who undertook special assignments, including an individual identified to Plaintiff as Rex Noaker.

74. Plaintiff performed the same ordinary heavy-equipment work without a respirator and without incident throughout his active assignment.

75. Defendants never identified a particular ordinary task Plaintiff had failed to perform or a specific exposure event requiring him to don a tight-fitting respirator during the work he actually performed.

76. To the extent emergency-response or special-assignment duties required a tight-fitting respirator, those duties could have been assigned to designated or volunteer personnel, just as Defendants had done while Plaintiff was actively working.

77. Defendants' actual practices demonstrated that Plaintiff could perform the essential functions of his heavy-equipment position while maintaining facial hair and without participating in optional respirator assignments.

## C. PLAINTIFF REQUESTED RELIGIOUS AND MEDICAL ACCOMMODATIONS

78. Plaintiff is a Messianic Pronomian Jewish believer.

79. His sincerely held religious beliefs include adherence to scriptural directives against shaving or cutting the beard and require him to maintain facial hair as part of his religious observance and identity.

80. Plaintiff also has eczema, a condition affecting the skin.

81. Repeated shaving causes or is likely to cause Plaintiff significant pain, inflammation, irritation, open lesions, infection risk, and scarring.

82. Similarly, Plaintiff has type 2 diabetes, a chronic impairment affecting endocrine function and wound healing.

83. The condition increases the seriousness of skin trauma and infection risk associated with repeated shaving.

84. On August 23, 2024, Plaintiff emailed CAM Human Resources representative Hunter Coffey and requested an exemption from the facial-hair rule for religious and medical reasons.

85. Coffey telephoned Plaintiff that morning, asked for additional details, and told Plaintiff that the request would be passed through the appropriate channels and that Plaintiff would be contacted if any issue arose.

86. After that conversation, Plaintiff continued working for approximately twenty-four (24) days without shaving and without receiving any warning that his beard made him unable to perform his job.

87. On September 12, 2024, while Plaintiff was driving home from work, CAM Superintendent Robert Sharp and CAM Director Shane Taylor called him.

88. They confirmed that Coffey had forwarded Plaintiff's request and that they had reviewed his religious and medical reasons.

89. Sharp and Taylor required Plaintiff to obtain medical documentation from a physician of his choosing and further documentation substantiating his sincerely held religious beliefs.

90. Plaintiff informed them that he had seen bearded individuals onsite, that respirator fit-testing had not been required for his work, and that he had performed the job without any respirator.

91. Plaintiff also proposed use of a loose-fitting, hooded, NIOSH-approved respiratory-protection system, including a Gentex PureFlo-type system, for any task that genuinely required respiratory protection and for which such equipment was appropriate.

92. Plaintiff offered to purchase the alternative equipment himself so that the accommodation would impose no equipment cost on Defendants.

93. Plaintiff also remained willing to continue his ordinary heavy-equipment duties without assignment to the voluntary or specialized tasks that required a tight-fitting facepiece.

94. Rather than allow Plaintiff to keep working while the request was evaluated as he had been doing, Sharp and Taylor directed that Plaintiff could not report the next day or perform further work unless he shaved.

95. Sharp and Taylor acknowledged that they did not want Plaintiff to violate his religion or harm his health, but nevertheless told him that compliance with the facial-hair rule was a condition of returning to work.

96. On or about September 14, 2024, Taylor sent Plaintiff a written request for a completed Medical Information Request Form and additional religious information, representing that CAM wished to evaluate restrictions and potential accommodations.

97. Plaintiff promptly complied.

98. On September 17, 2024, he obtained a medical evaluation and provided the requested medical information documenting his skin condition and the problems caused by shaving.

99. Plaintiff supplied CAM with written statements from religious leaders, including Pastor Matthew Vander Els of Founded in Truth Fellowship, corroborating Plaintiff's membership and sincerely held religious practice.

100. Plaintiff provided the medical and religious material to Taylor and other CAM representatives on or about September 17 and 18, 2024 and remained available to discuss additional information.

101. Sharp told Plaintiff that CAM had no independent policy controlling the issue, that the facial-hair standard was Cenovus', and that the request would be taken to Cenovus for final approval.

**D. DEFENDANTS DENIED THE REQUESTS AND EXCLUDED PLAINTIFF FROM WORK**

102. On or about September 20, 2024, Sharp told Plaintiff that he had heard Cenovus would not approve an exemption or accommodation.

103. Sharp refused Plaintiff's request for a written decision identifying who denied the request, the reasons for the denial, the tasks or hazards allegedly requiring a tight-fitting respirator, or the accommodations considered.

104. Sharp instead repeated that Plaintiff could return if he shaved.

105. When Plaintiff asked whether he was fired if he refused to violate his faith and risk medical harm, Sharp would not answer and again asked whether Plaintiff would shave and report.

106. Plaintiff told Sharp that he could not shave because doing so conflicted with his religion and exposed him to pain, skin injury, and infection.

107. Neither Defendant conducted a documented, individualized assessment of Plaintiff's actual heavy-equipment duties, the frequency or circumstances of any respirator use, the ability to exempt him from voluntary emergency-response assignments, the feasibility of loose-fitting equipment for appropriate tasks, or any other accommodation.

108. Neither Defendant met with Plaintiff to compare available respirator types or evaluate the specific hazards associated with his assigned work against the capabilities and limitations of the equipment he proposed.

109. Neither Defendant identified substantial increased costs, operational disruption, or any other concrete burden that a religious accommodation would impose in relation to its business.

110. Neither Defendant explained why Plaintiff could not continue performing the same duties he had already performed safely while bearded and without a respirator.

111. Neither Defendant offered Plaintiff a temporary modification, reassignment of special tasks, transfer to a vacant position, or any other effective accommodation.

112. CAM later asserted that it would look for another position, but Defendants never identified a vacancy, invited Plaintiff to apply for one, discussed qualifications for any opening, or documented a meaningful reassignment process with him.

113. Cenovus possessed authority over site access and could have allowed Plaintiff to return, approved a site exception, or required an individualized accommodation review.

114. It did none of those things.

115. CAM possessed authority to continue Plaintiff's employment, advocate for an exception, modify assignments, or place him elsewhere.

116. It did none of those things.

117. Instead, Defendants removed Plaintiff from all active work and pay beginning on or about September 12, 2024 and maintained that exclusion indefinitely.

118. Whether characterized as a suspension, inactive status, denial of site access, layoff, or non-termination, Defendants' action deprived Plaintiff of every shift, wage, overtime opportunity, benefit, and privilege of his employment and operated as a *de facto* discharge from the available assignment.

## E. PLAINTIFF SUPPLIED ADDITIONAL MEDICAL INFORMATION AND CLEARANCE

119. On September 21, 2024, Plaintiff was hospitalized for several days with sepsis associated with a foot ulcer and was formally diagnosed with type 2 diabetes.

120. Plaintiff notified Hertel and Sharp of his hospitalization and kept them apprised of his condition.

121. On September 22, 2024, Sharp told Plaintiff that he would need medical clearance to return to work and, separately, would still have to shave before Defendants would allow him to return.

122. Plaintiff obtained and provided a physician's return-to-work clearance to Hertel on or about September 25, 2024.

123. Hertel responded that Sharp had not yet heard from Cenovus, even though Sharp had already told Plaintiff that Cenovus would not approve the accommodation.

124. These inconsistent statements reinforced the absence of a transparent, good-faith process.

125. On or about September 27, 2024, Plaintiff supplied updated information concerning his type 2 diabetes and reiterated the associated health and infection concerns.

126. Defendants still did not restore Plaintiff to work, provide a reasoned written decision, request a further examination, arrange a functional or hazard assessment, or propose an alternative accommodation.

**F. PLAINTIFF OPPOSED DISCRIMINATION AND DEFENDANTS CONTINUED THE EXCLUSION**

127. Plaintiff contacted his union representative, Kip Seisel, and sought assistance concerning Defendants' refusal to accommodate him and their characterization of the issue as a safety matter.

128. On October 1, 2024, Plaintiff initiated an inquiry with the EEOC concerning the religious and disability discrimination.

129. On October 3, 2024, Plaintiff notified Coffey in writing that he believed Sharp and Taylor had discriminated and retaliated against him and informed CAM of his EEOC activity. He requested reinstatement and back pay.

130. On October 15, 2024, Plaintiff contacted Cenovus' corporate human-resources function in Canada to report the unresolved discrimination and exclusion.

131. On October 17, 2024, a Cenovus representative, Alissa Penner, spoke with Plaintiff at length and opened an ethics and integrity report concerning religious discrimination, disability discrimination, and retaliation.

132. On October 18, 2024, Cenovus U.S. Manager of Enterprise Security Investigations Brent Emmons confirmed that he had received Plaintiff's emails and attachments and had begun reviewing the matter.

133. Plaintiff identified for Cenovus the relevant CAM decision-makers and recipients, including CAM human-resources leader Stacey McArthur and CAM counsel Bill Pritchett, along with Sharp, Taylor, and Coffey.

134. On October 23, 2024, Plaintiff sent a detailed written complaint to McArthur and Pritchett, copying Sharp, Taylor, and Coffey.

135. He described the September 12 ultimatum, his medical and religious submissions, his proposed alternative equipment, the absence of required respirator use in his actual work, and his continuing exclusion.

136. Plaintiff expressly requested a permanent facial-hair accommodation, reinstatement, compensation for lost work, and reimbursement of expenses incurred to obtain documentation Defendants demanded.

137. CAM did not conduct a new interactive meeting with Plaintiff, did not reinstate him, and did not provide the requested written explanation.

138. Cenovus investigated or reviewed Plaintiff's report and supporting material but ultimately redirected him to CAM and ceased meaningful communication without restoring access to the worksite or remedying the exclusion.

139. Defendants continued to deny Plaintiff all work after he requested accommodations, opposed discrimination, invoked the EEOC process, and reported the matter through Cenovus' ethics procedures.

140. The close temporal relationship between Plaintiff's protected disability-accommodation request and discrimination complaints and Defendants' initial and continuing exclusion, together with their shifting explanations and departure from actual worksite practice, supports an inference of retaliation and discriminatory intent.

**G. DEFENDANTS' STATED SAFETY RATIONALE WAS OVERBROAD AND PRETEXTUAL**

141. Plaintiff does not contend that facial hair may interfere with the seal of a tight-fitting respirator.

142. He contends that Defendants used that general proposition to avoid the required individualized inquiry into whether a tight-fitting respirator was actually necessary for his position, duties, or work circumstances and whether accommodation was available.

143. Defendants did not require Plaintiff or the ordinary operators to wear tight-fitting respirators during the work at issue, did not issue such equipment to Plaintiff, and did not fit-test him before permitting him to work.

144. Defendants tolerated Plaintiff's visible facial hair while he worked safely *for weeks* and raised the supposed absolute bar only after he formally requested religious and medical accommodations.

145. Defendants permitted bearded individuals onsite and represented during orientation that exceptions existed, undermining their later assertion that no exception or task-based accommodation could ever be considered.

146. Defendants failed to identify a written pre-hire job description making routine tight-fitting respirator use an essential heavy-equipment-operator duty, as distinct from a general site rule or a requirement for special emergency assignments.

147. Defendants rejected Plaintiff's proposed equipment without a transparent assessment of where it could be used, failed to consider removing optional respirator tasks from his assignment, and failed to identify any other effective accommodation.

148. Defendants also failed to identify a concrete undue hardship arising from a religious exception or any direct threat that could not be eliminated or reduced through reasonable accommodation.

149. Defendants' shifting explanations, inconsistent communications, deviation from actual practice, failure to document the decision, and refusal to meaningfully explore alternatives demonstrate that the asserted safety justification was overbroad and served as a pretext for unlawful discrimination and retaliation.

150. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial lost wages, overtime, benefits, retirement or union-related contributions, advancement opportunities, and other economic loss.

151. Plaintiff has also suffered humiliation, anxiety, emotional distress, loss of dignity, and other non-economic harm, as well as out-of-pocket medical and documentation expenses.

152. Defendants acted intentionally, maliciously, and with reckless indifference to Plaintiff's federally protected rights after multiple managers, human-resources personnel, counsel, and corporate investigators received actual notice of his requests and complaints.

**COUNT I**
**RELIGIOUS DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER TITLE VII**
**(AGAINST BOTH DEFENDANTS)**

153. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

154. Plaintiff held a *bona fide* and sincerely held religious belief and practice that conflicted with Defendants' facial-hair requirement.

155. Plaintiff gave Defendants actual notice of that conflict and requested a religious accommodation.

156. Plaintiff was qualified for his heavy-equipment position and could perform its essential functions with a religious accommodation, including continued assignment to ordinary operator duties, exemption from optional tight-fitting-respirator assignments, appropriate alternative equipment where feasible, or reassignment to a suitable vacancy.

157. Defendants failed to reasonably accommodate Plaintiff's religious practice and instead removed him from all work and pay because he would not shave in violation of his faith.

158. The requested religious accommodation would not have imposed substantial increased costs or another undue hardship in relation to Defendants' businesses, particularly where Plaintiff had already performed the work safely, non-respirator assignments were available, and Plaintiff offered to pay for alternative equipment.

159. Defendants' acts altered the terms, conditions, and privileges of Plaintiff's employment and constituted unlawful religious discrimination under 42 U.S.C. § 2000e-2(a).

160. As a direct and proximate result, Plaintiff suffered the damages described above and is entitled to all relief available under Title VII and 42 U.S.C. § 1981a.

**COUNT II**
**RETALIATION UNDER TITLE VII**
**(AGAINST BOTH DEFENDANTS)**

161. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

162. Plaintiff engaged in activity protected by Title VII when he objected that Defendants' shave-or-leave directive violated his religious rights, complained internally of religious discrimination, initiated an EEOC inquiry and Charge, and reported religious discrimination through Cenovus' ethics process.

163. Defendants knew of Plaintiff's protected activity.

164. Defendants subjected Plaintiff to materially adverse actions, including barring him from work, withholding all shifts and pay, refusing reinstatement, failing to identify or offer alternative work, and maintaining his indefinite inactive status.

165. Defendants took and continued those actions because of Plaintiff's protected activity, as demonstrated by temporal proximity, shifting explanations, the absence of prior performance concerns, Defendants' tolerance of his facial hair before the request, and their refusal to correct the exclusion after his complaints.

166. Defendants thereby violated 42 U.S.C. § 2000e-3(a).

167. As a direct and proximate result, Plaintiff suffered the damages described above and is entitled to all relief available under Title VII and 42 U.S.C. § 1981a.

## COUNT III
## DISABILITY DISCRIMINATION, UNLAWFUL QUALIFICATION STANDARD, AND FAILURE TO ACCOMMODATE UNDER THE ADA
## (AGAINST BOTH DEFENDANTS)

168. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

169. Plaintiff's eczema and type 2 diabetes are physical impairments that substantially limit one or more major life activities and major bodily functions, including the operation of the skin and endocrine systems, wound healing, and caring for himself.

170. Plaintiff also had a record of those impairments, and Defendants regarded him as impaired.

171. Defendants had actual knowledge of Plaintiff's impairments and their effect on repeated shaving through his written requests, medical form, updated medical information, hospitalization notice, return-to-work documentation, and repeated communications.

172. Plaintiff was a qualified individual who could perform the essential functions of his heavy-equipment position with or without reasonable accommodation.

173. Plaintiff requested reasonable accommodations, including an exemption for ordinary duties that did not require a tight-fitting respirator, task restructuring, use of appropriate loose-fitting respiratory protection where feasible, and consideration of reassignment.

174. Defendants failed to provide a reasonable accommodation and failed to participate in a good-faith interactive process directed toward identifying an effective accommodation.

175. Defendants instead applied a blanket facial-hair or tight-fitting-respirator qualification standard that screened out or tended to screen out Plaintiff because of disability without demonstrating, as applied to his actual position and duties, that the standard was job-related, consistent with business necessity, and incapable of satisfaction through reasonable accommodation.

176. Defendants did not base the exclusion on an individualized assessment of a significant risk of substantial harm that could not be eliminated or reduced by reasonable accommodation.

177. By reason of the foregoing, Defendants discriminated against Plaintiff because of disability in violation of 42 U.S.C. § 12112(a), (b)(5)(A), and (b)(6).

178. As a direct and proximate result, Plaintiff suffered the damages described above and is entitled to all relief available under the ADA and 42 U.S.C. § 1981a.

**COUNT IV**
**RETALIATION AND INTERFERENCE UNDER THE ADA**
**(AGAINST BOTH DEFENDANTS)**

179. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

180. Plaintiff engaged in activity protected by the ADA when he requested medical accommodation, supplied disability-related documentation, objected to disability discrimination, initiated and pursued EEOC proceedings, and assisted internal investigations concerning his rights.

181. Defendants knew of Plaintiff's protected activity and subjected him to materially adverse action because of it, including removing him from work, continuing the unpaid exclusion, refusing reinstatement, and failing to offer available alternatives.

182. Defendants also coerced, intimidated, threatened, or interfered with Plaintiff's exercise and enjoyment of ADA-protected rights by conditioning continued work on abandoning his accommodation request and shaving despite documented medical risk.

183. Defendants' conduct would deter a reasonable employee from requesting an accommodation or opposing disability discrimination and violated 42 U.S.C. § 12203(a) and (b).

184. As a direct and proximate result, Plaintiff suffered the damages described above and is entitled to all relief available under the ADA.

**COUNT V**
**RELIGIOUS DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER THE OHIO CIVIL RIGHTS ACT**
**(AGAINST BOTH DEFENDANTS)**

185. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

186. Plaintiff was an employee protected from religious discrimination under Ohio Rev. Code § 4112.02(A).

187. Defendants knew that their facial-hair requirement conflicted with Plaintiff's sincerely held religious beliefs and failed to provide a reasonable accommodation.

188. Defendants excluded Plaintiff from all work and pay because he would not violate his religious practice, thereby discriminating against him with respect to hiring, tenure, terms, conditions, and privileges of employment.

189. Defendants' conduct was intentional, malicious, and in conscious or reckless disregard of Plaintiff's rights under Ohio law.

190. As a direct and proximate result, Plaintiff suffered the damages described above and is entitled to all legal and equitable relief available under Ohio law.

## COUNT VI
## DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER THE OHIO CIVIL RIGHTS ACT
## (AGAINST BOTH DEFENDANTS)

191. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

192. Plaintiff was disabled within the meaning of Ohio law and was qualified to perform the essential functions of his position with or without reasonable accommodation.

193. Defendants knew of Plaintiff's disabilities, denied his reasonable accommodation requests, applied an overbroad qualification standard, and excluded him from employment because of disability.

194. Defendants failed to conduct a good-faith interactive process and failed to demonstrate that no reasonable accommodation would enable Plaintiff to perform the actual essential functions of his position.

195. Defendants thereby discriminated against Plaintiff in violation of Ohio Rev. Code § 4112.02(A).

196. As a direct and proximate result, Plaintiff suffered the damages described above and is entitled to all legal and equitable relief available under Ohio law.

## COUNT VII
## RETALIATION UNDER THE OHIO CIVIL RIGHTS ACT
## (AGAINST BOTH DEFENDANTS)

197. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

198. Plaintiff engaged in protected activity under Ohio law by objecting to Defendants' refusal to accommodate his religious and medical needs, opposing religious and disability discrimination, filing and participating in administrative proceedings, and reporting the discrimination internally.

199. Defendants knew of Plaintiff's protected activity and subjected him to adverse action because of it, including the initial and continuing unpaid exclusion, refusal to reinstate, and failure to provide alternative work.

200. Defendants' conduct violated Ohio Rev. Code § 4112.02(I).

201. As a direct and proximate result, Plaintiff suffered the damages described above and is entitled to all legal and equitable relief available under Ohio law.

**COUNT VIII**
**AIDING AND ABETTING UNDER THE OHIO CIVIL RIGHTS ACT**
**(AGAINST EACH DEFENDANT IN THE ALTERNATIVE)**

202. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

203. CAM knowingly implemented and enforced the site-access and shave-or-no-work decision attributed to Cenovus, removed Plaintiff from the schedule, and maintained his unpaid exclusion.

204. Cenovus knowingly directed, approved, caused, ratified, or maintained the denial of site access and accommodation that CAM implemented, including after Cenovus received Plaintiff's internal ethics report and supporting information.

205. Each Defendant thereby aided, abetted, incited, compelled, coerced, attempted, or substantially assisted the other Defendant's unlawful discriminatory and retaliatory practices.

206. Defendants violated Ohio Rev. Code § 4112.02(J).

207. As a direct and proximate result, Plaintiff suffered the damages described above and is entitled to all legal and equitable relief available under Ohio law.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests judgment against Defendants, jointly and severally to the extent permitted by law, and an award of the following relief:

**A.** A declaration that Defendants violated Title VII, the ADA, and the OCRA;

**B.** A permanent injunction prohibiting Defendants from engaging in the discriminatory and retaliatory practices alleged herein and requiring appropriate corrective policies, training, and recordkeeping;

**C.** Reinstatement to a substantially equivalent position with reasonable accommodations and restoration of seniority, benefits, and all other employment rights, or front pay in lieu of reinstatement;

**D.** Back pay, lost overtime, lost benefits, lost union or retirement contributions, and all other past and future economic damages, with prejudgment interest;

**E.** Compensatory damages for emotional distress, humiliation, loss of dignity, inconvenience, out-of-pocket loss, and other non-economic harm;

**F.** Punitive damages to the maximum extent permitted by federal and Ohio law;

**G.** Nominal damages where appropriate;

**H.** Reasonable attorneys' fees, expert fees where recoverable, costs, and disbursements;

**I.** Post-judgment interest as provided by law; and

**J.** Such other and further legal or equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims and issues so triable under Rule 38 of the Federal Rules of Civil Procedure and applicable law.

Dated: Jamaica, New York
September 3, 2026

Respectfully submitted,

By: /s/ Daniel Cohen
Daniel Cohen, Bar No. NY5481460
CONSUMER ATTORNEYS PLLC
68-29 Main Street
Flushing, NY 11367
T: (718) 770-7901
F: (718) 247-8020
E: dcohen@consumerattorneys.com

**SAGE LEGAL LLC**

By: */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
*(motion for admission pro hac vice forthcoming)*
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Joseph Salvo*